[Civ. No. 26349.   Second Dist., Div. Three.   Aug. 21, 1963.]

HARVELLA HOGAN, Plaintiff and Respondent, v. JOHN RANDOLPH RICHARDS, Defendant and Appellant.

Sackett, Francoeur & Dalton, Parker, Stanbury, McGee, Peckham & Garrett and Raymond G. Stanbury for Defendant and Appellant.

Joseph Lewis for Plaintiff and Respondent.

FORD, J.—The plaintiff sued to recover damages for her injuries sustained when she was hit by a falling ladder in a ballroom of the Pasadena Athletic Club. The room had been rented by the defendant, the operator of the club, to members of a high school class for their graduation party. At the time of the accident students were placing decorations on a wall of the room. The plaintiff was present as the Parent Teachers Association chairman for the party. At the trial the jury returned a verdict in favor of the defendant. The plaintiff's motion for a new trial was granted on the ground that there was error at the trial in that the jury was improperly instructed as to the applicable law. The defendant has appealed from that order.

The determination of the question as to whether the trial court erred in granting a new trial must be made in the light of the evidence which related to the issue of liability. The plaintiff, Mrs. Hogan, testified that at the time she was injured there were five students, including Paul Cohen, engaged in the decoration of the room. Paul Cohen, who was on the ladder when it fell, described what was done as follows: ". . . we hung a fish net across the entire wall, and had balloons inside of the net, which were to drop at a certain hour of the night, and decorations all along the wall, crepe paper, . . ." The decorations were attached by means of scotch tape and the use of hooks which were on the wall.

Paul Cohen testified that Mr. Bremer, the employee of the defendant with whom the arrangement for the use of the ballroom had been made, told him where he could find a ladder. He went to the place designated and obtained "a wooden A-shaped ladder." He described it as follows: ". . . it extends about usually [sic] 8 feet or 7 feet, and it is of wood

construction, and it is like two H-ladders stuck together, and when it is standing up, it looks like an 'A' or an upside down 'V.' . . . it just had two thongs, I guess, you would call them that hooked two-thirds of the way across from one rung to the other rung.'' He said that it was not the kind of ladder that would be found in a home. He further testified that it had no antislip devices, such as ''rubber bottoms.'' He placed the ladder '' [p]arallel to the wall.'' His description of what happened when he was on the ladder, '' [o]ne rung from the top,'' was as follows: ''I had the fish net, and I was going to hang it up to the hook, and I saw I couldn't reach it, and I just made a motion to come down, and the next thing I knew I was laying on the floor.''

The plaintiff, Mrs. Hogan, testified that Mr. Bremer came into the room shortly after the accident. She further testified as follows: ''Mr. Bremer said that that ladder should never have been used. It was an old ladder, and that they were to throw it out. They had a new ladder . . . —he took this one out, and he went and got another ladder, which was metal, and it had the rubber tips.'' Paul Cohen then used the new ladder. The floor in the room was ''a regular ballroom floor, and it appeared to be waxed.''

During the course of the cross-examination of Paul Cohen, for the purpose of impeachment his attention was directed to a written statement he had made a week after the accident. He was then asked, ''Let me get your words here [as used in the statement] 'The ladder slipped and slid down the wall,' did it not, Mr. Cohen?'' The witness answered, ''Yes, sir.'' While counsel for the defendant resorted to the language of the prior statement in framing his question, the reasonable interpretation of the inquiry is that the witness was being asked to give his recollection, as of the time of his testimony, as to whether the ladder slipped. After he answered that it did slip, Paul Cohen testified that, although the ladder was touching the wall, it was not leaning against the wall.

On behalf of the defendant testimony was given that the ladder was being used in a closed position at the time of the accident. One of the students, Theresa Battista, testified that the bottom of the ladder was on the floor and the top of it was leaning against the wall. Her testimony was in part as follows: ''Well, Paul got up on the ladder, and the ladder evidently slipped from behind him, and Paul hung onto the net, because he cut his hands and the ladder slipped under.'' The part of the ladder which was on the floor slid outward

and away from the wall. At no time did she see the ladder standing on four legs so that it was in the shape of a letter A. She further testified that it was "a single ladder." It slipped because it "didn't have any nonskid rubber underneath the bottom of the ladder." The floor was slippery "[f]or a ladder with nothing on the bottom of it." The testimony of another student, Barbara Ann Ledesma, was similar to that of Theresa Battista with respect to the nature of the ladder and its position against the wall.

At the request of the defendant, the trial court instructed the jury as follows: "You are instructed that the ladder involved in this accident was intended to be used in an open position, with its two sides apart so that it would stand, in effect, on four legs. The defendant John Richards and his agents were under no duty to anticipate its use in any other way. Therefore, if you find that it was being used at the time in question without being in such open position, that it was leaned against the wall as if it consisted of a single side and single set of rungs, and that the accident was proximately caused because it was used in that manner, then no liability may be imposed on the defendant." In granting the motion for a new trial, the trial court determined that that instruction was erroneous.[1] For the reasons hereinafter stated, we believe that the instruction was an incorrect statement of the applicable law and that the error was such as to warrant the granting of the motion for a new trial.

█   The defendant's argument is that if Paul Cohen used the ladder by leaning it against the wall so that it was supported on only two of its legs, there was a misuse of the ladder and, consequently, there could be no liability. That position is untenable. The problem presented cannot be resolved by a mere determination of the way in which such a stepladder is ordinarily used. Rather, the test is whether it was reasonably foreseeable that the students to whom the ladder was supplied for a particular purpose would be likely to use it in the manner in which a ladder having only two legs is employed. (See *Yecny* v. *Eclipse Fuel Engineering Co.*, 210 Cal.App.2d 192, 197 [26 Cal.Rptr. 402]; *Mertes* v. *Atchison, T. & S. F. Ry. Co.*, 206 Cal.App.2d 64, 69-70 [23 Cal.Rptr. 320]; *Phillips* v. *Ogle Aluminum Furniture, Inc.*,

---

[1]In its memorandum the court stated in part: "The error inherent in these instructions was further compounded by the special interrogatories submitted to the jury, which carried the implication that if the jury found the ladder was used in a closed position they must necessarily find for the defendant."

106 Cal.App.2d 650, 653-654 [235 P.2d 857].)

■ In the present case the trier of fact could properly draw the inference that the defendant should have anticipated that the students, in the course of reaching high on the wall to attach decorations by use of tape or to hang articles on hooks, would be likely to use the ladder by leaning it against the wall on two legs so as to facilitate their work, and that it was probable that a bystander, such as the plaintiff business invitee, would be injured by reason of the slipping of the ladder on the smooth ballroom floor if some antislip device[2] or precaution was not employed, and that it was probable that the students would fail to take such precaution. The Supreme Court stated in *Richardson* v. *Ham*, 44 Cal.2d 772, at page 777 [285 P.2d 269] : " 'If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' (Rest., Torts, § 449 ; *McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 298-299 [195 P.2d 783] ; *Benton* v. *Sloss*, 38 Cal.2d 399, 405 [240 P.2d 575].)"

■ "Where there is uncertainty as to the existence of negligence the question is not one of law but of fact to be settled by the jury; and this is so whether the uncertainty arises from a conflict in the evidence or because fair-minded men will honestly draw different conclusions from undisputed facts." (*Johnson* v. *Nicholson*, 159 Cal.App.2d 395, 409 [324 P.2d 307].) ■ Because of the instruction set forth hereinabove the plaintiff was deprived of an opportunity to present fully to the jury the issue of liability. Such error of law justified the granting of a new trial. (See *Los Angeles City High School Dist.* v. *Kita*, 169 Cal.App.2d 655, 664 [338 P.2d 60].)

It is not necessary to consider other matters relating to the jury instructions which the trial court also determined to constitute errors of law. The problems involved are not likely to present serious difficulties upon a retrial.

The order is affirmed.

Shinn, P. J., and Files, J., concurred.

---

[2]The antislip device to which reference was made in the course of the trial consisted of rubber tips on the legs.