[Civ. No. 9818. Fourth Dist., Div. Two. Nov. 24, 1970.]

SUSAN THOMAS, a Minor, etc., Plaintiff and Appellant, v.
GENERAL MOTORS CORPORATION et al.,
Defendants and Respondents.

82

## COUNSEL

Young, Henrie & McCarthy and John C. McCarthy for Plaintiff and Appellant.

King & Mussell, Ronald A. Burford, Ross L. Malone and James P. Melican, Jr., for Defendants and Respondents.

## OPINION

**KERRIGAN, J.**—Plaintiff, Susan Thomas, a 6-year-old minor at the time of the accident, acting by her guardian ad litem, filed an action to recover damages for personal injuries sustained in a laundromat when the glass on top of one of the washing machines gave way as she was leaning on it and her left hand and arm were drawn into the machine while the unit was in full operation. Named as defendants were Malinda Lamb, the laundromat owner, Coin-O-Matic Equipment, Inc., the washing machine dealer, General Motors Corporation, the washing machine manufacturer, and Frigidaire Sales Corporation, a company formed for the purpose of selling washers manufactured by General Motors.

A jury awarded the plaintiff $5,000 damages against the laundromat owner (Lamb), but determined that she take nothing from the three remaining defendants. Judgment was entered accordingly.

Plaintiff initially appealed from that portion of the judgment decreeing that she take nothing against the manufacturer (GM), its sales organization (Frigidaire), and the dealer (Coin-O-Matic). She also appealed from the judgment in her favor against the operator (Lamb). However, pending appeal, plaintiff settled with the operator and dealer for $5,950.13 ($5,000—verdict + $797.93—court costs + $152.20—interest = $5,950.13) Consequently, GM and Frigidaire are the only respondents.

 Before proceeding to the merits of the case, it is necessary to determine whether plaintiff is estopped from prosecuting her appeal inasmuch as her guardian ad litem, with court approval, executed a covenant not to sue in favor of the laundromat owner and washing machine dealer. Defendants maintain that, having accepted the benefits of the judgment, plaintiff is barred from seeking any further relief.

Section 877 of the Code of Civil Procedure provides as follows: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith *before* verdict or judgment to one or more . . . tortfeasors claimed to be liable for the same tort—(a) It

shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and (b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors." (Italics added.)

Defendants contend that the foregoing statute is not applicable because the covenant was given *after* judgment. Except as modified by section 877, the former law still applies, and a release of one joint tortfeasor is a release of all. (*Watson* v. *McEwen*, 225 Cal.App.2d 771, 775 [37 Cal.Rptr. 677].) In *Watson*, the jury returned a verdict against an owner and· his lessee; the court granted judgment notwithstanding the verdict to the owner and granted the lessee's motion for a new trial unless plaintiff consented to a reduction, which she did; the lessee paid the judgment in full, and a satisfaction of judgment was filed; in dismissing the appeal against the owner, the court held that plaintiff's acts were inconsistent with the retention of the right of appeal, and that section 877 of the Code of Civil Procedure did not apply because it provided that the release be executed before judgment; consequently, plaintiff was estopped from pursuing her appeal.

Plaintiff argues that the code in no way precludes a party from executing a covenant not to sue or appeal further where the action is taken on appeal, because the judgment is not final. ■ A covenant not to sue one of several joint tortfeasors does not operate as a release of the others (*Stewart* v. *Cox*, 55 Cal.2d 857, 861 [13 Cal.Rptr. 521, 362 P.2d 345]), and it makes no difference under the law existing prior to the enactment of section 877 of the Code of Civil Procedure whether the covenant is executed before or after judgment. (See *Laurenzi* v. *Vranizan*, 25 Cal.2d 806, 813 [155 P.2d 633]; Rest., Torts, § 885.) ■ While the distinction between a release and a covenant not to sue is highly artificial (see *Pellett* v. *Sonotone Corp.*, 26 Cal.2d 705, 711-713 [160 P.2d 783, 160 A.L.R. 863]), a covenant not to sue is a valid method of avoiding the effect of the release doctrine by employing different language. (See 2 Witkin, Summary of Cal. Law (7th ed. 1960) pp. 1188-1189.)

■ In view of the strong policy favoring settlement rather than litigation and the harshness of the release doctrine governing joint tortfeasors, the use of the covenant not to sue should be extended to cases involving multiple defendants even after judgment has been rendered in the trial court and an appeal has been filed. ■ In the case under review, there is no longer any dispute between plaintiff and the defendants Lamb and Coin-O-Matic. In the event of retrial and an adverse verdict, GM and Frigidaire will be

entitled to a set-off. (See *Laurenzi* v. *Vranizan, supra,* 25 Cal.2d 806, 813.) Therefore, plaintiff is not estopped from pursuing her appeal.

Turning to the merits of the case, on July 2, 1966, plaintiff accompanied her mother to the Ontario laundromat owned and operated by Malinda Lamb. The laundromat was equipped with 24 top-loading washing machines manufactured by GM. The machines had been newly installed prior to July 1964, when Lamb assumed ownership of the business. Susan and her mother were the only ones in the laundromat at the time of the accident. The little girl went up to one of the washing machines the mother was using when she observed the machine shaking. The top lid of the unit contained a glass window in the center. The window was roughly 10 inches in diameter. The glass was held in place or secured to the lid by a hard rubber seal gasket with a slot in the underside. When the lid was fully assembled, this slot contained a rubber "bead"—a round, ⅜-inch solid piece of rubber—which stiffened the underside of the seal gasket in order to hold the glass in the lid and to prevent it from rotating in the gasket.

Susan testified that she ". . . leaned [her] left hand on the glass . . . [t]o see if it would shake, too." When the glass gave way, her arm plunged inside the machine which was functioning in rapid spin-dry cycle at the time. The child's screams alerted the mother and the latter extracted the girl's arm from inside the unit. The child sustained a badly damaged left hand and comminuted fractures of the left humerus—the bone between the elbow and the shoulder. At the time of trial the fractures of the humerus had healed, but the youngster experienced permanent scarring of the hand and diminished dexterity through loss of muscle tissue.

While there is some indication that the child may have been playing on top of the machine and fell in, as contrasted with the child's testimony to the effect that she merely leaned on the lid while at ground level, it can be fairly stated that the rubber "bead" situated within the seal gasket was not in place at the time of the accident. With the bead in place, the glass could withstand an external pressure from above of 290-380 pounds. Without the bead, a force of 12-20 pounds applied to the glass could cause the glass to fall into the machine.

Plaintiff propounded three theories of recovery against the manufacturer and its sales outlet: (1) defect in the design and manufacture of the lid mechanism; (2) negligent design, manufacture, assembly, testing and inspection of the lid mechanism; and (3) negligent failure to warn users of a concealed danger and risk.

In maintaining that the judgment was erroneous in denying her any recovery of money damages against GM and Frigidaire, plaintiff raises several

issues, only two of which are critical to the appeal: (1) Two of the instructions rendered by the trial court were erroneous; and (2) the court also erred in rejecting a proffered instruction.

■ Plaintiff argues that the effect of the following instruction rendered by the trial court was to direct the jury to find that the lid was not defectively designed:

"A defective design is such that the design itself inherently subjects a user to an unreasonable risk of harm from the reasonable and intended use of the washing machine.

"The nondefective design of a washing machine does not require that the latest, best, or safest design be utilized; neither is there any duty on . . . defendants to anticipate the misuse, mismounting, or abuse of the washing machine.

*"In the event you find that the beading had been removed from the gasket as of the time of plaintiff's accident, then you are instructed that the washing machine was not being used for its intended purpose, and that such condition does not constitute a defective design."* (Italics added.)

■ Strict liability encompasses both design and manufacture. (*Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 64 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].) There is no rational distinction between design and manufacture, since a product may be equally defective and dangerous if its design subjects protected persons to unreasonable risk as if its manufacture does so. (*Pike v. Frank G. Hough Co.,* 2 Cal.3d 465, 475 [85 Cal.Rptr. 629, 467 P.2d 229].) "A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design." (Rest.2d Torts, § 398; *Pike v. Frank G. Hough Co., supra,* 2 Cal.3d 465, 470.)

■ As the foregoing instruction correctly indicated, a manufacturer is not required to produce an accident-free or foolproof machine. (*Zahora v. Harnischfeger Corp.,* 404 F.2d 172, 175.) However, the manufacturer must use reasonable care to design his product so as to make it safe for the use for which it was intended. (*Varas v. Barco Mfg. Co.,* 205 Cal.App.2d 246, 258 [22 Cal.Rptr. 737].) "Reasonable care" varies with the facts of each case; it involves a balancing of the likelihood of harm to be expected from a machine with a given design and the gravity of harm if it happens against the burden of the precaution which would be effective to avoid

the harm. (*Pike* v. *Frank G. Hough Co., supra,* 2 Cal.3d 465, 470.) A product without necessary safety devices may be found defective. (*Pike* v. *Frank G. Hough Co., supra,* pp. 476-477; see *Garcia* v. *Halsett,* 3 Cal. App.3d 319, 323, 326 [82 Cal.Rptr. 420]; see also *Menchaca* v. *Helms Bakeries, Inc.,* 68 Cal.2d 535, 540-541[67 Cal.Rptr. 775, 439 P.2d 903].)

██ Applying the foregoing principles to the case under review, the instruction was erroneous. The most significant errors are found in the language to the effect that a manufacturer is under no duty to anticipate the "misuse, mismounting, or abuse" of his product, and that if the bead had been "removed," the machine was not being used for its intended purpose.

GM's position is that a manufacturer's liability should not extend to injuries that cannot be traced to the product as it reached the market (*Escola* v. *Coca-Cola Bottling Co.,* 24 Cal.2d 453, 468 [150 P.2d 436]; concurring opinion Traynor, J.; see also 13 A.L.R.3d 1082-1084), that the missing bead constituted an alteration of the original design, and that strict liability has been denied when the product has been altered after leaving the manufacturer's hands. (See Rest.2d Torts, § 402A (1) (b); *Erickson* v. *Sears, Roebuck & Co.,* 240 Cal.App.2d 793, 799-800 [50 Cal.Rptr. 143]; see also *Martinez* v. *Nichols Conveyor etc. Co.,* 243 Cal.App.2d 795, 799 [52 Cal.Rptr. 842]; *Ulwelling* v. *Crown Coach Corp.,* 206 Cal.App.2d 96, 114-115 [23 Cal.Rptr. 631].) GM argues that a manufacturer cannot produce a product incapable of being misused, mismounted, abused, or negligently maintained. But it does not follow from these contentions that a manufacturer is under no duty to consider any of these factors when he is adopting a design for his product. Whether a manufacturer has conformed with a standard of reasonable care in adopting a plan or design should be left to the jury. ██ Although it is incumbent on a plaintiff seeking to impose strict liability to establish that he was injured while using the product in a way it was intended to be used (*Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d 57, 64), a manufacturer may be held liable where the misuse by the customer was reasonably foreseeable. (*Yecny* v. *Eclipse Fuel Engineering Co.,* 210 Cal.App.2d 192, 197 [26 Cal.Rptr. 402]; see *Phillips* v. *Ogle Aluminum Furniture,* 106 Cal. App.2d 650, 654 [235 P.2d 857].)

██ The instruction was also incorrect in precluding liability if the bead had been "removed." The issue of intervening causation is usually left to the jury (see 1 Frumer & Friedman, Products Liability (1968) § 11.04(1)), and foreseeability of the intervening act is the key element. (*Yecny* v. *Eclipse Fuel Engineering Co., supra,* 210 Cal.App.2d 192, 198.) There was some evidence that there had been incidents of vandalism in

the laundromat during Malinda Lamb's ownership, and that missing beads had been replaced on several occasions. Whether the manufacturer should have foreseen this activity in adopting a design employing a removable bead to secure the glass is an issue which should have been left to the jury.

The import of the instruction was to the effect that plaintiff could not recover against GM if the bead was not in place, regardless of the reason for its absence. ▆▆▆ A defect in manufacture may be proved circumstantially (*Vandermark* v. *Ford Motor Co.*, 61 Cal.2d 256, 260 [37 Cal. Rptr. 896, 391 P.2d 168]); it necessarily follows that a defect in design may be established in a similar manner. ▆▆▆ In the event the jury had been properly instructed, it could have concluded that the bead was missing because an inferior rubber material had been used in making the bead, or that the bead had not been properly installed in the first instance, or that irrespective of the cause of the bead being missing, a safe plan or design would have placed the ring on the outside of the door where its absence could have been readily noted by operators, users and customers.

Finally, there is no logical nexus between the removal of the bead and the machine being used for its intended purpose. Obviously, every manufacturer intends that his product be used without modification. The question in the instant case, however, is whether the design adequately insured that goal. The last paragraph of the instruction is confusing, misleading, and begs the question.

▆▆▆ Plaintiff next contends that the following instruction (based on BAJI 218-A, New, mod.) involving the doctrine of foreseeability of use was erroneous: "The manufacturer of an article who places it on the market for use under circumstances where he knows such article will be used without inspection for defects, is liable for injuries proximately caused by defects in design of the article of which the user was not aware, provided the article was being used as designed and for the purpose for which it was designed and intended to be used."

The court also rendered an instruction defining defective design in the following manner: "A defective design is such that the design itself inherently subjects a user to an unreasonable risk of harm from the reasonable and intended use of the washing machine."

Plaintiff maintains that the instruction based on BAJI 218-A is defective because it is confusing to jurors who are unable to determine whose intended use is meant—the manufacturer's or the consumer's—and that the instruction allows a manufacturer to define the scope of his own risk by uses he intends, a subjective standard, rather than reasonably foreseeable uses, an objective standard.

Plaintiff offered a separate instruction adapted from BAJI 218-A, which she contends contained the correct standard, but it was refused:

"The manufacturer of an article who places it on the market for use under circumstances where he knows or should know that such article will be used without inspection for defects, is liable for injuries proximately caused by defects in the manufacture or design of the article of which the user was not aware provided the article was being used in a manner which was reasonably foreseeable by the manufacturer at the time when the product was placed on the market."

■■■ In a strict liability case, it is incumbent upon a plaintiff to prove that he was injured while using the product in a way it was intended to be used as a result of a defect in design or manufacture of which plaintiff was not aware that made the article unsafe for its intended use. (*Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d 57, 64.) A manufacturer or supplier is liable only when the misuse by a customer is one that is reasonably foreseeable. (*Yecny* v. *Eclipse Fuel Engineering Co., supra,* 210 Cal.App.2d 192, 197; see *Phillips* v. *Ogle Aluminum Furniture, supra,* 106 Cal.App.2d 650, 654.)

■■■ Both parties place considerable reliance on *Preston* v. *Up-Right, Inc.,* 243 Cal.App.2d 636 [52 Cal.Rptr. 679], as authority for their respective instructions. In *Preston,* BAJI 218-A was given, and the court approved it as an adequate statement of the law, although criticizing it as somewhat inartfully drafted. As approved in *Preston,* the instruction imposed strict liability "provided the article was being used *reasonably* for the purpose for which it was designed and intended to be used." In the case at bar, the defendant's instruction was modified to impose strict liability where "the article was being used as *designed* and for the purpose for which it was designed and intended to be used."

Considering the instructions as a whole (*Chance* v. *Lawry's, Inc.,* 58 Cal.2d 368, 380 [24 Cal.Rptr. 209, 374 P.2d 185]), we conclude that the jury was properly apprised of the law. The instruction defining defective design clearly included the element of reasonable use for the jury's consideration of the question, and encompasses the reasonable man standard.

Plaintiff's instruction, which was refused by the trial court, was also refused in *Preston,* where the court commented that it was "a more appropriate statement of the law" than BAJI 218-A. (At p. 641.) We deem

[Nov. 1970]

plaintiff's instruction to be far superior to the one given. However, since the instruction given was proper, there was no error.

The judgment is reversed.

Tamura, Acting P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied December 15, 1970, and the petitions of the appellant and the respondents for a hearing by the Supreme Court were denied January 21, 1971.