[Civ. No. 37428. Second Dist., Div. Two. Dec. 20, 1971.]

LINDA JOY THOMPSON, Plaintiff and Appellant, v.
PACKAGE MACHINERY COMPANY, Defendant and Respondent.

COUNSEL

Kenneth L. Knapp and Leonard Sacks for Plaintiff and Appellant.

George A. Kuittinen and Jean Wunderlich for Defendant and Respondent.

## OPINION

**HERNDON, J.**—Plaintiff brought this action seeking recovery of damages for personal injuries allegedly sustained by her as a result of the defective design of a machine manufactured by defendant's predecessor. She invokes the doctrine of strict liability.

The case was tried with a jury which returned a verdict for the defendant. Plaintiff appeals from the judgment contending that there were prejudicial errors in the trial court's instructions. We have concluded that there is merit in plaintiff's contentions and that a new trial should be ordered.

### Statement of the Facts

At the time of her injury, plaintiff who was then 20 years old, was employed by a plastic molding company as a machine operator. The subject machine is a closing ram type in which the ram closes and exerts great pressure against a platen, thereby molding the plastic material which is injected into the machine for that purpose. After the plastic is thus molded, the machine opens, and the operator manually removes the molded material. This cycle occurs every 20 seconds during the 8-hour working day.

The machine is equipped with a gate which slides along a rail in front of the moving parts. When the gate is in the open position, its weight depresses one of two safety levers which prevent the ram from closing and striking against the platen. While the gate is in the open position, the operator removes the finished part from the die.

When the gate is closed by manually pushing it to the right, thus preventing access to the moving die parts, the first of the two safety levers is released and automatically moves into the "go" position. The die parts will then close when the second lever is manually turned to the right by the operator. Thus, the ram will close and strike against the platen only when both levers have been forced into the "go" position—the first by the closing of the gate with the operator's left hand, and the other when it is turned to the right with the right hand.

The accident in question occurred when plaintiff opened the gate and, as usual, reached inside the machine to remove the plastic which had been molded. The machine closed prematurely causing an injury which resulted in the amputation of plaintiff's hand and part of her arm.

The lever that should have held the ram in the locked position by the weight of the gate in its open position was not depressed because the gate

had jumped off its slide, thus bypassing that lever. The other lever was moved into the "go" position by plaintiff, either *intentionally* in order to speed up the cycle as defendant sought to prove, or *accidentally* by her leaning against it as indicated by plaintiff's version of the accident.

Plaintiff alleged two design defects which, according to her theory of the case, rendered the machine unreasonably dangerous and caused the accident resulting in her injury. Firstly, she alleged that the roller which was designed to keep the gate on the slide was not strong enough to serve its purpose, and, secondly, she alleged that the "go" lever activated by the operator's right hand was not adequately protected against accidental engagement. Plaintiff, by way of expert testimony, introduced evidence tending to support her theory that the machine's safety devices were inadequate due to their defective design.

Defendant's position was that the gate, if dangerous at all, became so only because of a modification made after it had left the factory. In addition, defendant contended that the machine was not used in the manner it was intended to be used in that plaintiff activated the "go" lever before closing the gate. Defendant also introduced evidence tending to prove that the gate was safe according to the "state of the art" at the date of manufacture.

### Doctrine of Strict Liability

In the landmark decision of *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897], it was held that "[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." At page 64, *Greenman* held that the plaintiff could recover on a strict liability theory if he proved "that he was injured while using the [power tool] in a way it was intended to be used as a result of a defect in design and manufacture of which plaintiff was not aware that made the [tool] unsafe for its intended use."

In *Pike* v. *Frank G. Hough Co.,* 2 Cal.3d 465, 470 [85 Cal.Rptr. 629, 467 P.2d 229], which was decided subsequent to the trial of the case at bench, the law is stated as follows: "The duty of a manufacturer with respect to the design of products placed on the market is defined in the Restatement Second of Torts, section 398: 'A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the

adoption of a safe plan or design.' Thus, the manufacturer must use reasonable care ' "to so design his product as to make it not accident-proof, but safe for the use for which it was [*sic*] intended." ' (*Varas* v. *Barco Mfg. Co.* (1962) 205 Cal.App.2d 246, 258 [22 Cal.Rptr. 737], quoting from 76 A.L.R.2d 91, 94.) What is 'reasonable care,' of course, varies with the facts of each case, but it involves a balancing of the likelihood of harm to be expected from a machine with a given design and the gravity of harm if it happens against the burden of the precaution which would be effective to avoid the harm. (2 Harper and James, The Law of Torts (1956) § 28.4, p. 1542.)"

The jury in the case at bar was properly instructed concerning the general rules of law governing a manufacturer's strict liability for unreasonably dangerous products that cause personal injury when being used as intended. However, as plaintiff contends, the court erred in giving certain other instructions concerning the necessity that the danger be concealed and concerning the effect of intervening forces in relieving the manufacturer of liability.

### *The Trial Court's Instruction That the Manufacturer's Liability Is Limited to Hidden Defects and Concealed Dangers Was Erroneous.*

The trial court gave the following instruction as requested by defendant: "You are further instructed that generally, the manufacturer's liability is limited to hidden defects and concealed dangers, and this may be so even though other manufacturers provide safety devices."

In requesting this instruction defendant cited the decision of the Court of Appeal in *Pike* v. *Frank G. Hough Co.* However, subsequent to the trial herein, that decision was set aside by the order of the Supreme Court granting a hearing and in the Supreme Court's ensuing decision of *Pike* above cited the rule of law stated in the challenged instruction was disapproved with the statement at page 474 that "even if the obviousness of the peril is conceded, the modern approach does not preclude liability solely because a danger is obvious."

Defendant correctly points out that the foregoing quotation from *Pike* is found in the portion of the decision which deals with the negligence theory of liability. However, it is sufficiently clear that the stated rule applies also when the doctrine of strict liability is invoked. This is indicated by reference to decisions from other jurisdictions which are cited with approval in *Pike*.

For example, in *Wright* v. *Massey-Harris, Inc.*, 68 Ill.App.2d 70 [215 N.E.2d 465] cited with approval in *Pike* at page 476, the machine in-

volved was a cornpicker. The defects alleged were "that it lacked a shield over the area in which ears of corn could jam in the chain mechanism and a guard over the shucking rollers from which ears of corn were manually extracted."

The defendant in the Illinois case contended that "the complaint fails to allege facts sufficient to demonstrate that there was any hidden or latent defect in them, but on the contrary, the complaint shows that the danger would be obvious to anyone placing his hands in the corn husking rollers while the machine was in operation . . ." (*Wright* v. *Massey-Harris, Inc.,* supra, at p. 467.) The Illinois court rejected this contention. The rule deducible from these decisions is that the adequacy of safety devices reasonably required to protect the user from the known danger is generally a question of fact for the trier of the facts.

We reject defendant's contention that the instruction limiting the manufacturer's liability "to hidden defects and concealed dangers" was non-prejudicial. In his closing argument counsel for defendant repeatedly called the "hidden danger" instruction to the jury's attention, stating "it's my contention in this case that all the parts that they are making charges against were open and obvious, as was the manner of function . . . you will also hear further [in the court's instructions] that generally a manufacturer's liability is limited to hidden defects and concealed danger . . . ."

This instruction in effect directed a verdict for the defense unless the jury were to find that the defects were "hidden" and the damages "concealed." Such a state of the law would virtually insure immunity of manufacturers with respect to machines, which, like the one at bar, contain exposed, moving parts, since the danger of injury in the absence of adequate safety devices is obvious rather than concealed.

### The Trial Court's Refusal to Instruct
### the Jury on Concurrent Causes Was Error.

Plaintiff proffered the following instruction patterned after BAJI (5th ed.) No. 3.77: "There may be more than one legal cause of an injury. When the conduct of two or more persons contribute concurrently as a legal cause of an injury, the conduct of each of said persons or corporations is a legal cause of the injury regardless of the extent to which each contributes to the injury. A cause is concurrent if it was operative at the moment of the injury and acted with another cause to produce the injury. It is no defense that the conduct of a person not joined as a party was also a legal cause of the injury."

The only difference between the BAJI instruction and the instruc-

tion proffered by plaintiff is the deletion of the adjective "negligent" before the word "conduct." The instruction, as it appears in BAJI, is approved in numerous California cases. (*Warner* v. *Santa Catalina Island Co.*, 44 Cal.2d 310, 319 [282 P.2d 12]; *N.W. etc. Ins. Co.* v. *Rogers etc. Foundry*, 73 Cal.App.2d 442, 443 [166 P.2d 401]; *Gall* v. *Union Ice Company*, 108 Cal.App.2d 303, 312 [239 P.2d 48].)

The change in the wording was proper since we are dealing with a strict liability case. In *Grinnell* v. *Charles Pfizer & Co.*, 274 Cal.App.2d 424 [79 Cal.Rptr. 369], the action was treated by the Court of Appeal as one for strict liability. The subject instruction was given with the substitution of the term "wrongful acts or omissions" for "negligent conduct." At page 442 of the decision, it was held that there was no prejudicial error in the giving of the instruction.

In another strict liability case, the Illinois Supreme Court in *Vlahovich* v. *Betts Machine Co.*, 45 Ill.2d 506 [260 N.E.2d 230, 233], reversed the judgment because of the trial court's refusal to give an instruction on concurrent causation. The court held that the proximate cause instruction given by the trial court was "unduly restrictive" because it "did not permit the jury to consider the possible concurrent causes in evidence, and did not furnish proper guidance to the jury."

In rejecting the defendant's contention that proximate cause was lacking, the appellate court held that there was no rational basis for limiting recovery to situations in which the defect in manufacture was the sole operative cause of the accident and the resultant injuries.

In *Richey* v. *Sumoge*, 273 F.Supp. 904, the plaintiff was injured due to the defective design of the brush machine manufactured by the defendant, and a defect in the power take-off on the tractor that pulled the defendant's machine. The district court held that the issues determinative of the defendant's liability were properly submitted to the jury even though

there were two causes of the injury one of which could not be charged against the defendant. At page 907 the court stated: "[The defendant] could have foreseen that a user might, from time to time, be compelled to remove debris from around the joint while the motor of the tractor was running, although the power take-off was in neutral. Additionally, [the defendant manufacturer] might have foreseen that the power take-off could be engaged by either the negligence of a third person, such as another operator or a defective take-off appliance, or for that matter, a pure accident."

### The Instruction That the Defendant Could Not Be Found Liable if the Accident Was Caused by an Alteration in the Machine Was Erroneous.

█ The trial court instructed the jury that "you cannot find the defendant liable if you find that the cause of the accident and injury was due to an alteration in the machine as it was manufactured or designed or any of its components."

The error in this instruction is shown by reference to *Thomas* v. *General Motors Corp.,* 13 Cal.App.3d 81 [91 Cal.Rptr. 301]. The factual setting and the essence of the decision in *Thomas* as it bears upon the issue of law now under consideration are succinctly stated in the following quotation from the summary preceding the opinion at pages 81-82 of the official report: "Plaintiff, acting through her guardian ad litem, brought an action for damages for personal injuries sustained in a laundromat when the glass top of a washing machine gave way as she was leaning on it. A jury awarded plaintiff damages against the laundromat owner, but determined that she take nothing from the three remaining defendants, the washing machine dealer, the manufacturer, and a sales company formed for the purpose of selling the washers."

"The Court of Appeal reversed the judgment. . . . As to the merits of the case, the court held erroneous an instruction to the effect that a manufacturer is under no duty to anticipate the 'misuse, mismounting, or abuse' of his product, and that if a rubber bead used to hold the glass on the washing machine lid had been 'removed' the machine was not being used for its intended purpose. The court stated that whether a manufacturer has conformed with his standard of reasonable care in adopting a plan or design should be left to the jury, and that although such instruction correctly indicated that a manufacturer is not required to produce an accident-free or foolproof machine, such manufacturer must use reasonable care to design his product so as to make it safe for the use for which it is intended. The court also held that such instruction was incorrect in

precluding liability if the bead had been 'removed,' even though there was some evidence that there had been incidents of vandalism in the laundromat and that missing beads had been replaced on several occasions."

The instruction held erroneous in *Thomas* was as follows: " 'A defective design is such that the design itself inherently subjects a user to an unreasonable risk of harm from the reasonable and intended use of the washing machine.

" 'The nondefective design of a washing machine does not require that the latest, best, or safest design be utilized; neither is there any duty on . . . defendants to anticipate the misuse, mismounting, or abuse of the washing machine.

" 'In the event you find that the beading had been removed from the gasket as of the time of plaintiff's accident, then you are instructed that the washing machine was not being used for its intended purpose, and that such condition does not constitute a defective design.' "

It would unduly extend this opinion to quote at length the decision in *Thomas* which discloses the reasoning and the authorities relied upon by the court in condemning the instruction there under consideration. For present purposes it suffices to emphasize the conclusion that a manufacturer may be held liable where the alteration of the machine or its misuse by the customer was reasonably foreseeable. ■ This issue and the issue whether or not the machine was designed with reasonable care to protect persons using the product in a way it was intended to be used against foreseeable danger are issues of fact to be left to the jury.

It has been held repeatedly that the foreseeability of the misuse of a product is a question for the trier of the facts. (*Phillips* v. *Ogle Aluminum Furniture,* 106 Cal.App.2d 650, 654 [235 P.2d 857]; *Yecny* v. *Eclipse Fuel Engineering Co.,* 210 Cal.App.2d 192, 197 [26 Cal.Rptr. 402]; *Hogan* v. *Richards,* 219 Cal.App.2d 495, 498 [33 Cal.Rptr. 282]; *Johnson* v. *Standard Brands Paint Co.,* 274 Cal.App.2d 331, 340 [79 Cal.Rptr. 194].)

The judgment is reversed.

Roth, P. J., and Fleming, J., concurred.

On January 14, 1972, the opinion was modified to read as printed above.