601 A.2d 748

ALFONSO JURADO, PLAINTIFF–RESPONDENT–CROSS–APPEL-
LANT, AND MARLENE JURADO, PLAINTIFF, v. WESTERN
GEAR CORPORATION AND BUCYRUS–ERIE COMPANY,
DEFENDANTS–APPELLANTS–CROSS–RESPONDENTS, AND
WESTERN GEAR WORKS, ORVILLE DUTRO AND SONS, BU-
CYRUS–ERIE CORPORATION, JOHN DOE, RICHARD ROE,
ABC CORPORATION, XYZ CORPORATION, SAID NAMES BE-
ING FICTITIOUS, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued October 7, 1991—Decided January 22, 1992.

Before Judges J.H. COLEMAN and KEEFE.

*Roger C. Wilson* argued the cause for the appellants-cross-respondents, Western Gear Corp. and Bucyrus–Erie Co. (*Zucker, Facher & Zucker,* attorneys; *Roger C. Wilson,* on the brief).

*Amy Lynn Fenno* argued the cause for the respondent-cross-appellant (*Kenneth J. Fost, P.C.*, attorney; *Amy Lynn Fenno*, on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

In this product liability action, defendants Western Gear Corporation and Bucyrus–Erie Company (referred to herein collectively as "defendant"), appeal from the entry of a judgment in favor of the plaintiff notwithstanding the verdict.[1] Plaintiff, Alfonso Jurado, cross-appeals from the trial court's denial of his motion for a new trial on the issue of damages. For the reasons stated herein we affirm the judgment notwithstanding the verdict but reverse the judgment denying plaintiff's motion for a new trial and remand for a trial on damages.

Plaintiff, an employee of N & W Printing, was injured while operating a collator machine manufactured by defendant. He was assigned to operate the machine by his employer and had been doing so for several years prior to the accident.

The machine, as its name indicates, was used to collate and assemble business forms with up to eight parts. Continuous rolls of paper were fed into the machine to the end that when the paper was properly cut and glued a fully assembled multi-sheet business form would result. At or near the end of the process, the perforated edge of the form (necessary for the feeding process but unnecessary for the final form), was removed by a rotating knife as the paper was fed through a rotating cylinder. The excess paper, called "salvage," entered a vacuum tube positioned below the table. The salvage was then discharged through piping supplied by the employer to a disposal bind also provided by the employer.

---

[1] The defendants are apparently one and the same entity for the purpose of this appeal. Therefore, all references herein shall be to the singular "defendant."

Plaintiff testified that the vacuum tube attached to the disposal unit would occasionally block from the build-up of salvage, requiring the operator to unclog it. Usually this could be done by using a blade-like tool apparently furnished by the employer. However, on occasion, the blade could not dislodge the material and the operator would then be required to remove it manually. According to plaintiff, the process of clearing the vacuum tube could only be accomplished by reaching under the table because the mouth of the tube was located just beneath the work surface.

The vacuum tube was positioned in close proximity to the aforementioned rotating cylinder. In the same vicinity of the cylinder and vacuum tube beneath the table, there was a metal support bar which ran across the width of .the machine. The proximity of the metal support bar and the rotating cylinder created what the expert witnesses in the case described as an "in-running nip point."

On the day of the accident, scraps of salvage became stuck in the vacuum tube. Plaintiff reduced the speed of the machine and attempted to use the blade to clear the tube. He was unable to do so and attempted to remove the salvage with his hand. In doing so he either had to crouch or kneel and reach under the table and upward toward the opening of the tube. As he was attempting to dislodge the salvage, he lost his balance and in an effort to regain it reached out with his right hand. His right hand became caught in the nip point between the cylinder and the support bar.

Although an on/off switch was located at the operator's station close to where this accident occurred, plaintiff testified that his employer had instructed him not to turn the machine off when clearing the salvage because a shut down would ruin the sequence of the collation process. This fact was disputed by his employer.

Plaintiff's expert Gerald Weiner, a mechanical engineer specializing in machine design, testified that the machine was

defective because the in-running nip point was unguarded and there was no warning about the danger of dislodging the clogged salvage without first turning off the machine. Weiner testified that a sheet metal guard would be easy to fabricate, would be inexpensive and would not affect the function of the collator. He reasoned that guarding was necessary in this instance because of the likelihood that the vacuum system would clog and the operator would have to manually dislodge the salvage.

The defense expert, Edward Schwalje, acknowledged that there was an in-running nip point where plaintiff's injury occurred. While acknowledging that in-running nip points are normally guarded when they are in the operating area or where inadvertent contact can occur, he believed that this nip point was guarded by its location. An area is guarded by location, according to Schwalje, when it is inaccessible in the normal activity of operating the machine. In his view, it took a deliberate effort to reach the nip point in question. He said that the collator was not intended to be accessed while it was in operation because it was designed to be stopped for that purpose. He reasoned that warnings would also be unnecessary in view of the fact that plaintiff was aware of the danger and knew the purpose of the on/off buttons. He opined that it is impracticable to warn about the danger of every moving part on a machine.

At the close of all of the evidence, plaintiff moved for a directed verdict based on *Johnson v. Salem Corp.*, 97 *N.J.* 78, 477 *A.*2d 1246 (1984). The trial judge reserved decision on the motion and submitted the case to the jury.

After giving the jury appropriate instructions on the law, the trial judge asked the jury to answer the following questions:

1) Was the product as designed, manufactured or sold, defective, in that it was not reasonably safe for its intended or reasonably foreseeable uses?

2) Did the defect exist when the product left the hands and control of the defendant?

3) At the time of the accident, was the product being used for an intended or reasonably foreseeable purpose, that is, that it was not being misused or had not been substantially altered in a way that was not reasonably foreseeable? 2
4) Was the defect in the product a proximate cause of the accident?

The jury answered questions one, two and four in the negative. However, it answered the third question in the affirmative, thereby concluding that at the time of the accident the product was being used in an intended or reasonably foreseeable manner.

Notwithstanding a verdict in favor of the defendant, the trial judge instructed the jury to assess monetary damages. In compliance with that instruction, the jury assessed damages in the amount of $65,000.

Following the verdict, plaintiff moved for a judgment notwithstanding the verdict on the grounds that there was an inconsistency in the jury's findings on liability. The trial judge granted the motion indicating that it was his belief that the jury clearly misunderstood the facts or the charge. The trial judge then entered a verdict in favor of plaintiff in the amount of $92,514.18 plus fees and costs. (The $65,000 award found by the jury plus prejudgment interest.) Plaintiff moved for an *additur* or new trial on damages. That motion was denied. Thereafter, the appeal and cross-appeal were filed.

On appeal, defendant contends that there was ample evidence to support the jury verdict in its favor on the issue of defect and that the trial judge improperly inserted himself as the seventh juror. Defendant argues that the question of defect hinged on the credibility of the expert witnesses and the trial judge cannot resolve that credibility issue in favor of plaintiff.

■ We agree with the general proposition advanced by defendant. That is, where an issue hinges on credibility the resolution of that issue is ordinarily a jury function. *Johnson,*

---

2Defendant objected to the portion of the court's charge concerning question number three. However, the error alleged with respect thereto has not been raised as an issue on this appeal.

*supra,* 97 *N.J.* at 92, 477 *A.*2d 1246. However, when testimony is reliable and uncontradicted, credibility is not a jury question. *Id.* at 93, 477 *A.*2d 1246.

> [W]here the uncontradicted testimony of a witness, interested or otherwise, is unaffected by any conflicting inferences to be drawn from it and is not improbable, extraordinary or surprising in its nature, or there is no other ground for hesitating to accept it as the truth, there is no reason for denying the verdict dictated by such evidence.

*Id.* (citing *Ferdinand v. Agriculture Ins. Co. of Watertown, N.Y.,* 22 *N.J.* 482, 498, 126 *A.*2d 323 (1956)). In *Johnson,* the Court examined the "standards for evaluating evidence, particularly expert testimony, under the strict liability doctrine and determining when such evidence can fairly be characterized as sufficiently free from dispute to present only a question of law." *Id.* 97 *N.J.* at 82–83, 477 *A.*2d 1246. Plaintiff's expert in that case was of the view that the machine was not safe. The expert's opinion was supported by factual evidence. Defendant's expert testified the machine was safe. However, his opinion was found to have been a "net opinion" and therefore inadmissible. Consequently, judgment was entered in favor of the plaintiff because reasonable minds could not differ that the uncontradicted and reliable expert testimony in the case showed that the machine was not safe.

We do not suggest here, as plaintiff now urges, that Mr. Schwalje's opinion was a net opinion. However, for the reasons that follow, we conclude that the facts of the case, when interpreted in light of the jury's answer to question number three, clearly exhibit a rejection of the premise which undergirded Mr. Schwalje's opinion thereby rendering Mr. Weiner's opinion essentially uncontradicted.

■ The trial judge ruled that plaintiff's conduct was irrelevant and that the jury was not to "infer anything that the plaintiff did as wrong here which caused the accident." *Suter v. San Angelo Foundry & Machine Co.,* 81 *N.J.* 150, 167, 406 *A.*2d 140 (1979). This is so because "the law does not accept the employee's ability to take care of himself as an adequate

safeguard of interests which society seeks to protect." *Id.* Thus, if the plaintiff was performing his "assigned task" on the machine, his conduct is irrelevant in determining whether the manufacturer carried out its duty to design a machine that was reasonably safe. *Id.* at 168, 406 *A.*2d 140. On the other hand, if the machine is not being used for its "intended or foreseeable purposes" the question becomes whether it was the design of the machine or the unforeseeable use which was the cause of the accident. *Id.; see Brown v. United States Stove Co.,* 98 *N.J.* 155, 484 *A.*2d 1234 (1984).[3] In the latter respect, the employee's conduct may be relevant.

■ The thrust of defendant's argument in summation focused on "how the machine was designed and how it was meant to be used." Defendant contended that an on/off switch was located at the operator's station so the machine could be shut off before the operator attempted to clear any jam in the vacuum system. Additionally, defendant relied on the fact that the accident did not happen at the point of operation on the top of the machine where the operator could be expected to inadvertently place his hand while the machine was running, but, rather, in a remote area "in the bowels of the machine" where the operator would have to crouch down and purposely reach into the machine in order to clear a jam. Defendant reasoned that, in view of the remoteness of the area where plaintiff's accident happened, the in-running nip point was guarded by reason of location. Finally, defense counsel argued that a guard at that location would affect the utility of the machine because it too would ultimately jam and interfere with "the flow of the machine." In essence, defendant's summation advanced the theory that plaintiff's use of the machine at the time of the accident was neither intended nor foreseeable, or, in

---

[3]We acknowledge, but need not discuss for the purpose of this case, the possibility of concurrent causation in such circumstances.

the alternative, that guarding the machine would have substantially affected its utility.

Despite defendant's argument, the jury found that plaintiff's use of the machine was reasonably foreseeable, and it was not being misused at the time of the accident. Nonetheless, the jury found no defect in the machine. Such a finding is not necessarily inconsistent. The plaintiff has the burden of proving that he was using the machine in a way intended or reasonably foreseeable from the standpoint of the manufacturer, that the machine was defective, and that the defect was a proximate cause of his injuries. Those elements are theoretically independent of each other. *See O'Brien v. Muskin Corp.*, 94 *N.J.* 169, 179, 463 *A.*2d 298 (1983). Thus, in a given case, a jury could conclude that, although a worker was using a machine in a foreseeable manner, the machine was not defective even though plaintiff was injured because there was, for example, no alternative safer design.

However, that hypothetical result was not possible under the facts of this case and in the context of the defense theory. The jury's finding that plaintiff was using the machine in a foreseeable manner was a rejection of the defense expert's theory that the in-running nip point was guarded by reason of its location and a machine operator would not come in contact with it during normal operation. Defendant does not challenge that finding on appeal, or the jury instruction which produced that finding. Given that finding, even the defense expert would have had to agree that the nip point should have been guarded. He testified that "[a] nip point is only hazardous if it's in a location where the operator has to put his hands or a point of operation or a point where he can inadvertently touch it during the normal course of his operation." The jury found that plaintiff had to put his hand into the nip point area during foreseeable operation.

Thus, the only remaining justification for not guarding the nip point would be if the guarding in some way substantially

impaired the utility of the machine. In such circumstances a jury could conclude that a manufacturer would have been justified in not guarding the nip point even in the face of a clearly established risk. *See Suter, supra,* 81 *N.J.* at 171–174, 406 *A.*2d 140. However, plaintiff's expert testified that a guard at that location would not have been costly and would not have adversely affected the operation of the machine. That testimony was not refuted by defendant's expert. Defense counsel's argument to the contrary in summation is not evidence and cannot be used to justify the jury's determination that no defect existed. Therefore, we find the principles of *Johnson, supra,* clearly applicable.

■ Plaintiff's cross-appeal is also governed by the Supreme Court's decision in *Johnson* which affirmed the Appellate Division's holding that " 'a damages verdict accompanying a no cause for action is not reliable.' " *Johnson, supra,* 97 *N.J.* at 96, 477 *A.*2d 1246 (quoting *Johnson v. Salem Corp.,* 189 *N.J.Super.* 50, 58, 458 *A.*2d 1290 (App.Div.1983)). Plaintiff's motion for a new trial on damages should have been granted.

The judgment on liability notwithstanding the verdict in favor of plaintiff is affirmed. The judgment denying plaintiff's motion for a new trial on damages is reversed and the matter is remanded accordingly.