619 A.2d 1312

ALFONSO JURADO, PLAINTIFF–RESPONDENT, AND MARLENE JURADO, HIS WIFE, PLAINTIFF, v. WESTERN GEAR WORKS, ORVILLE DUTRO AND SONS, BUCYRUS–ERIE CORPORATION, JOHN DOE, RICHARD ROE, ABC CORPORATION, AND XYZ CORPORATION, SAID NAMES BEING FICTITIOUS, DEFENDANTS, AND WESTERN GEAR CORPORATION AND BUCYRUS–ERIE COMPANY, DEFENDANTS–APPELLANTS.

Argued October 14, 1992—Decided March 3, 1993.

376

*M. Christie Wise* argued the cause for appellants (*Bumgard-ner, Hardin & Ellis,* attorneys; *George R. Hardin,* of counsel; *Ms. Wise* and *Edward M. Suarez, Jr.,* on the briefs).

*Amy Lynn Fenno* argued the cause for respondent (*Fost and Muscio,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

Our focus is on the meaning of "misuse" as that term is used in a strict-liability design-defect products-liability case. See *Ellsworth v. Sherne Lingerie, Inc.,* 303 *Md.* 581, 495 *A.*2d 348, 354–55 (1985) (suggesting various definitions of "misuse"). In the present case, the problem arises from confusion inherent in Model Civil Charge 5.34I pertaining to product misuse. The trial court relied on that charge, which confuses the purpose for which a product is used with the manner of using it, in submitting special interrogatories to the jury. Those interrogatories apparently misled the jury about the meaning of "misuse."

Before submitting the case to the jury, the court reserved decision on a motion for a directed verdict by plaintiff Alfonso Jurado. After the jury returned a verdict for defendants Western Gear Corporation and Bucyrus–Erie Company, the court granted Jurado's motion for a judgment notwithstanding the verdict. The Appellate Division affirmed the judgment on liability in Jurado's favor and remanded to the Law Division for a trial on damages only. 253 *N.J.Super.* 263, 601 *A.*2d 748 (1992).

We granted certification, 130 *N.J.* 7, 611 *A.*2d 647 (1992). We now reverse that part of the Appellate Division's judgment that affirmed the judgment on liability and remand the matter to the Law Division for a trial on both liability and damages.

–I–

Jurado, an employee of N & W Printing, injured his right hand when it became caught in an "in-running nip point" located between a rotating cylinder and a support bar underneath a collating machine. The machine, which was designed to

collate and assemble business forms, was manufactured and distributed by defendants.

During the collating process, excess paper salvage would enter a vacuum tube beneath the machine. Frequently, the paper would build up at the mouth of the tube, forcing the operator to clear it by hand. The tube was located near the rotating cylinder underneath the collator.

On the date of the accident, Jurado reduced the speed of the machine and tried to clear salvage that was blocking the vacuum tube. As he crouched and reached under the collator with his left hand, he lost his balance and tried with his right hand to prevent himself from falling. Jurado's right hand was injured when it was drawn into the in-running nip point. He claimed that he had not turned off the collator before attempting to unclog the vacuum tube because his employer had warned that the interruption would confuse the collating sequence. N & W Printing disputes this claim. Before trial, plaintiff Marlene Jurado abandoned her claim for loss of consortium. The trial proceeded on Jurado's personal-injury claim.

Jurado's expert witness, Gerald Weiner, a mechanical engineer, testified that the collator did not conform to proper design standards because of the absence of a guard on the in-running nip point. Weiner stated that at the time the collator was manufactured, defendants easily and inexpensively could have installed a sheet-metal fixed-barrier guard around the nip point. According to Weiner, the guard would not have affected the function of the machine and could have been installed for as little as $40 to $50 per unit.

He testified that since 1948 design engineers have recognized the potential danger posed by nip points. Defendants should have known, according to Weiner, that salvage would obstruct the mouth of the vacuum, and that an operator of the machine ultimately would have to clear the vacuum manually. In addition, he claimed that production engineers know that employees will typically take "shortcuts" to increase their productivity.

Thus, according to Weiner, a machine designer should have taken precautionary steps to prevent accidents that may result from such foreseeable shortcuts by employees.

He also noted that the area of the machine containing the in-running nip point was not "guarded by its location." He defined a guarded location as one either located more than eight feet off the floor or that could not be reached without removing a part of the machine. Weiner intimated that defendants had indirectly acknowledged that the location of the nip point did not constitute a guard because defendants had placed fixed-barrier guards over other nip points in the same area of the collator. He concluded that the in-running nip point was a foreseeable hazard and that defendants had avoided the use of well-known inexpensive methods of installing a guard.

Defendants' expert, Edward Schwalje, a mechanical engineer, asserted that the existence of the nip point did not require the installation of a sheet-metal guard. In his opinion, the nip point was already guarded by its location. Schwalje said that the location served as a guard because Jurado would not have placed his hands in the nip point during the normal course of operating the machine. He pointed out that Jurado had to squat and reach under the machine to touch the nip point, which was twenty-eight inches off the ground.

Schwalje acknowledged that the gears near the location of the injury were properly covered with fixed guards. He stated, however, that the collator had numerous moving parts that created nip points that were potentially dangerous if the operator "tamper[ed]" with the collator while it was in operation. According to Schwalje, the collator was not designed to be adjusted or repaired while in operation. Further, in the case of "salvage jams," the machine was designed to be stopped and cleaned while in "static condition." He concluded that the machine was "safe for use as intended" and met the design standards for safety when it was manufactured and distributed by defendants in the early–to–mid–1960s.

Finally, Schwalje testified that he did not know whether defendants had reasonably anticipated when they had manufactured and distributed the machine that salvage would build up at the mouth of the vacuum tube. He stated, however, that similarly-designed collators occasionally jam because of excess salvage.

At the close of the entire case, Jurado moved for a directed verdict. He asserted that Schwalje's testimony constituted a "net opinion" and that "reasonable minds could not differ" on the outcome in favor of Jurado. After reserving decision, the court charged the jury, instructing it to reach a verdict on damages even if it found for defendants on liability. Relying on Model Civil Jury Charge 5.34I, the court instructed the jury to answer four special interrogatories. The interrogatories and the jury's answers are:

1. Was the product as designed, manufactured or sold defective, in that it was not reasonably safe for its intended or reasonably foreseeable uses? No.

2. Did the defect exist when the product left the hands and control of the defendant? No.

3. At the time of the accident was the product being used for an intended or reasonably foreseeable purpose, that is, that it was not being misused or had not been substantially altered in a way that was not reasonably foreseeable? Yes.

4. Was the defect in the product a proximate cause of the accident? No.

The jury returned a verdict in favor of defendants on liability and awarded Jurado hypothetical damages of $65,000.

In his motion for a judgment notwithstanding the verdict, Jurado argued that the jury's answers to the special interrogatories were inconsistent with the evidence presented at trial. The court granted that motion, but denied Jurado's subsequent motion for *additur* or a new trial on damages. It then entered a verdict in favor of Jurado for $92,514.18 (the $65,000 award plus prejudgment interest).

The Appellate Division affirmed the judgment on liability, but reversed the denial of a new trial on damages. It found that the affirmative answer to interrogatory three constituted a rejection of the defense expert's testimony and therefore left

the opinion of Jurado's expert uncontradicted. 253 *N.J.Super.* at 271–72, 601 *A.*2d 748. The court interpreted the jury's response to the third interrogatory as a finding that "plaintiff's use of the machine was reasonably foreseeable, and it was not being misused at the time of the accident." *Id.* at 271, 601 *A.*2d 748. This, according to the court, constituted a denial of the plausibility of the defense expert's theory that the nip point was guarded by its location. *Ibid.* Thus, the court found that the judgment notwithstanding the verdict was warranted. We have a different view.

### –II–

We cannot tell whether the jury simply concluded that Jurado was using the collator for its intended purpose, as the trial court apparently believed, or that Jurado was not misusing the machine, as the Appellate Division believed. See *ibid.* In fairness to the lower courts, some confusion inheres in Model Civil Jury Charge 5.34I. That charge states in relevant part:

> If you find that the plaintiff has shown by the preponderance of the credible evidence that (1) the product as designed, manufactured or sold was defective, in that it was not reasonably safe for its intended or reasonably foreseeable uses, (2) the defect existed when the product left the hands and control of the defendant, (3) that at the time of the accident the product was being used for an intended or reasonably foreseeable purpose, that is, that it was not being misused or had not been substantially altered in a way that was not reasonably foreseeable, ... and (5) that the defect in the product was a proximate cause of the accident, then you must find for the plaintiff. If plaintiff has failed to establish any one of the just mentioned elements, then you must find for defendant.

Initially, subparagraph 3 of Model Civil Jury Charge 5.34I leads a jury to believe that the focus of the question is the purpose for which the product was used. The charge, however, proceeds to define "use for an intended or reasonably foreseeable purpose" in terms of whether the product was "misused" or "substantially altered." Thus, the charge could be understood to define misuse solely in terms of the purpose for which the collator was being used without mentioning the manner of use.

As read by the Appellate Division, the answer to the third interrogatory, which was based on subparagraph three, confuses the purpose for which a product is used with the manner in which it is used. If the jury found in answering interrogatory three that Jurado was using the collator for its intended purpose, that finding would constitute only a partial resolution of the issue of misuse. The Appellate Division assumed that the jury's response necessarily found not only that the product was being used for a reasonably foreseeable purpose, but also that Jurado's manner of use was reasonably foreseeable.

–A–

■ Jurado instituted this action on October 4, 1985, before the effective date of the Products Liability Act (the Act), *N.J.S.A.* 2A:58C–1 to –7. Consequently, the Act does not apply to Jurado's accident. *See L.* 1987, *c.* 197, § 8. The Legislature, moreover, did not intend that the Act codify all issues of product liability law. *Senate Judiciary Committee Statement, L.* 1987, *c.* 197. For instance, the Act does not specifically address product misuse. It states only that a manufacturer may be held liable "if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose...." *N.J.S.A.* 2A:58C–2.

■ Nor did the Legislature intend that the Act would effect a doctrinal change in the common law. *Fabian v. Minster Mach. Co.,* 258 *N.J.Super.* 261, 273, 609 *A.*2d 487 (App.Div.) (citing *Dewey v. R.J. Reynolds Tobacco Co.,* 121 *N.J.* 69, 94–95, 577 *A.*2d 1239 (1990)), certif. denied, 130 *N.J.* 598, 617 *A.*2d 1220 (1992). The Act generally "leaves unchanged the ... theories under which a manufacturer ... may be held strictly liable for harm caused by a product...." *Dewey, supra,* 121 *N.J.* at 94, 577 *A.*2d 1239. The Legislature intended that the common law should fill the interstices left by the terms of the Act. *Senate Judiciary Committee Statement, L.*1987, *c.* 197; *see also*

William A. Dreier, *Analysis: 1987 Products Liability Act*, 41 *Rutgers L.Rev.* 1279 (1989) (stating that the Legislature did not intend to supersede prior statutory or common law consistent with the Act). To fill those interstices, we turn to the common law.

■ Generally, to succeed under a strict-liability design-defect theory, a plaintiff must prove that (1) the product was defective; (2) the defect existed when the product left the hands of the defendant; and (3) the defect caused the injury to a reasonably foreseeable user. *O'Brien v. Muskin Corp.*, 94 *N.J.* 169, 179, 463 *A.*2d 298 (1983). Because this case involves a design defect, as distinguished from a manufacturing defect, plaintiff must show specifically that the product " 'is not reasonably fit, suitable and safe for its intended or reasonably foreseeable purposes ....' " *Michalko v. Cooke Color & Chem. Corp.*, 91 *N.J.* 386, 394, 451 *A.*2d 179 (1982) (quoting *Suter v. San Angelo Foundry & Mach. Co.*, 81 *N.J.* 150, 169, 406 *A.*2d 140 (1979)).

■ The decision whether a product is defective because it is "not reasonably fit, suitable and safe" for its intended purposes reflects a policy judgment under a risk-utility analysis. *O'Brien, supra,* 94 *N.J.* at 181, 463 *A.*2d 298. That analysis seeks to determine whether a particular product creates a risk of harm that outweighs its usefulness. *Ibid.* Risk-utility analysis is especially appropriate when a product may function satisfactorily under one set of circumstances and yet, because of a possible design defect, present an unreasonable risk of injury to the user in other situations. *Id.* at 181–82, 463 *A.*2d 298.

■ Under a risk-utility analysis, a defendant may still be liable when a plaintiff misused the product, if the misuse was objectively foreseeable. *Johansen v. Makita USA, Inc.*, 128 *N.J.* 86, 95, 607 *A.*2d 637 (1992) (citing *Cepeda v. Cumberland Eng'g Co.*, 76 *N.J.* 152, 177–78, 386 *A.*2d 816 (1978), *overruled on other grounds by Suter, supra,* 81 *N.J.* 150, 406 *A.*2d 140).

The concept of foreseeable misuse extends to cases in which a product has been substantially altered from its original design. *Brown v. United States Stove Co.*, 98 *N.J.* 155, 168–69, 484 *A.*2d 1234 (1984); *Soler v. Castmaster, Div. of H.P.M. Corp.*, 98 *N.J.* 137, 151, 484 *A.*2d 1225 (1984). Hence, the plaintiff in a design-defect products-liability suit may succeed even if the product was misused, as long as the misuse or alteration was objectively foreseeable. *Soler, supra,* 98 *N.J.* at 151, 484 *A.*2d 1225; *Suter, supra,* 81 *N.J.* at 159, 406 *A.*2d 140; *Cepeda, supra,* 76 *N.J.* at 177–78, 386 *A.*2d 816.

■ The absence of misuse is part of the plaintiff's case. Misuse is not an affirmative defense. *Cepeda, supra,* 76 *N.J.* at 177, 386 *A.*2d 816. Thus, the plaintiff has the burden of showing that there was no misuse or that the misuse was objectively foreseeable. *Johansen, supra,* 128 *N.J.* at 95–96, 607 *A.*2d 637; *Brown, supra,* 98 *N.J.* at 169, 484 *A.*2d 1234. So, for example, when a derrick operator injured his thumb while grabbing an overhead chain, he bore the burden of proving the foreseeability of his misuse. *Beatty v. Schramm, Inc.,* 188 *N.J.Super.* 587, 591, 458 *A.*2d 127 (App.Div.1983).

■ Essentially, product misuse contemplates two kinds of conduct. One is the use of a product for an improper purpose. "If, for instance, a plaintiff undertakes to use his power saw as a nail clipper and thereby snips his digits, he will not be heard to complain. . . ." *Suter, supra,* 81 *N.J.* at 194, 406 *A.*2d 140 (Clifford, J., concurring). For a plaintiff to recover, the purpose for which the product is used at the time of the accident must be objectively foreseeable. When a plaintiff is injured while using the product for a purpose that is not objectively foreseeable, the injury does not establish that the product is defective.

■ The other kind of misuse concerns the manner in which the plaintiff used the product. When, for example, the operator of a high-lift forklift is injured while using the forklift on steep, instead of level, terrain, the emphasis should be on the

manner, not the purpose, of the misuse. *Barker v. Lull Eng'g Co.*, 20 *Cal.*3d 413, 143 *Cal.Rptr.* 225, 573 *P.*2d 443 (1978). As comment h of *Restatement (Second) of Torts* § 402A states: "A product is not in a defective condition when it is safe for normal handling or consumption."

Commentators have accepted the definition of misuse in terms of purpose and manner. See Fowler V. Harper, Fleming James, Jr., and Oscar S. Gray, *The Law of Torts* § 28.6 at 364–69 (2d ed. 1986); William A. Landes and Richard A. Posner, *A Positive Economic Analysis of Products Liability*, 14 *J.Legal Studies* 535, 561 (Dec.1985); William L. Prosser, *The Law of Torts* § 102 at 668–69 (4th ed. 1971). So have courts in other states. See, *e.g., Kavanaugh v. Kavanaugh*, 131 *Ariz.* 344, 348, 641 *P.*2d 258, 262 (1982); *Simpson v. Standard Container Co.*, 72 *Md.App.* 199, 527 *A.*2d 1337, 1341 (1987); *Crown Controls Corp. v. Corella*, 98 *Nev.* 35, 639 *P.*2d 555, 556 (1982). We, too, find the definition to be helpful.

■ Product misuse theoretically could relate to the existence of a defect, the issue of causation, or that of comparative fault. See James A. Henderson, Jr. and Aaron D. Twerski, *Products Liability Problems and Process* 669 (2d ed. 1992). In a work-place setting, when, because of a design defect, an employee is injured while using a machine in a reasonably foreseeable manner, the employee's comparative fault is irrelevant. *Rivera v. Westinghouse Elevator Co.*, 107 *N.J.* 256, 260, 526 *A.*2d 705 (1987); *Green v. Sterling Extruder Corp.*, 95 *N.J.* 263, 264, 471 *A.*2d 15 (1984); *Suter, supra,* 81 *N.J.* at 177, 406 *A.*2d 140.

■ To the extent that misuse relates to the duty to design a safe product, "a manufacturer has a duty to make sure that its manufactured products placed into the stream of commerce are suitably safe when properly used for their intended or reasonably foreseeable purposes." *Brown, supra,* 98 *N.J.* at 165, 484 *A.*2d 1234 (citing *Soler, supra,* 98 *N.J.* at 144–45, 484 *A.*2d 1225; *Suter, supra,* 81 *N.J.* at 169, 406 *A.*2d 140);

see also Victor E. Schwartz, *Strict Liability and Comparative Negligence*, 42 *Tenn.L.Rev.* 171, 172 (1974) ("[when] a user makes an unforeseeable misuse of a product, the supplier has breached no duty to the user."). When someone is injured while using a product for an unforeseeable purpose or in an unforeseeable manner, the misuse sheds no light on whether the product is defective, because a manufacturer is not under a duty to protect against unforeseeable misuses. *Suter, supra,* 81 *N.J.* at 159, 406 *A.*2d 140. A manufacturer, however, has a duty to prevent an injury caused by the foreseeable misuse of its product.

■ If the jury concludes that the product is defective, it must then determine whether the misuse proximately caused the injury. *See, e.g., Brown, supra,* 98 *N.J.* at 171, 484 *A.*2d 1234. Even if a defect is a contributing or concurring cause, but not the sole cause, of an accident, the manufacturer will be liable. *Brown, supra,* 98 *N.J.* at 171, 484 *A.*2d 1234. For example, if, in the present case, the accident had happened when a co-employee negligently or playfully bumped plaintiff while he crouched in front of the collator, the manufacturer could be found liable notwithstanding the untoward conduct of the co-employee. In that situation, the jury should consider whether the absence of the guard.was the proximate, contributing, or concurring cause of the injury.

■ In some situations, however, the issue of proximate cause is predetermined by the finding that the product is defective solely because of the manufacturer's failure to protect against a foreseeable misuse. As Professor Aaron D. Twerski explains:

If a court determines that a design defect exists [solely] because the manufacturer has failed to include [ ] safety devices, there is no proximate cause question of any moment left to consider. The very reason for declaring the design defective was to prevent this kind of foreseeable misuse. Proximate cause could not, in such a case, present an obstacle on the grounds of misuse. To do so would negate the very reason for declaring the design defective in the first instance.

[*The Many Faces of Misuse: An Inquiry Into the Emerging Doctrine of Comparative Causation,* 29 *Mercer L.Rev.* 403, 421 (1978).]

In sum, when misuse is an issue in a design-defect case, the jury should first determine whether the plaintiff used the product for an objectively foreseeable purpose. If the jury finds that the plaintiff's purpose was not foreseeable, the defendant did not breach any duty owed to the plaintiff. If, however, the jury finds that the plaintiff's purpose was foreseeable, it must then decide whether the product was defective.

Under the risk-utility analysis, the jury must then determine whether the plaintiff used the product in an objectively foreseeable manner. The effect of a finding that the plaintiff did not so use the product, like a determination that the product was not used for a foreseeable purpose, is that the jury will have found that the defendant did not breach any duty owed to the plaintiff. If, however, the jury finds that the plaintiff used the product in an objectively foreseeable manner, it should then evaluate the product's utility. *See Brown, supra,* 98 *N.J.* at 170, 484 *A.*2d 1234. That evaluation entails the determination whether the defendant feasibly could have modified the product's design to prevent the injury or whether that modification would have either unreasonably impaired the utility of the product or excessively increased its cost. *Ibid.*

If the jury finds that the product is defective, it must then decide whether the misuse proximately caused the injury. In cases in which the product is defective solely because of a foreseeable misuse, the determination of defect predetermines the issue of proximate cause. In other cases, however, where a product is defective for reasons other than the particular misuse, the jury must separately determine proximate cause.

Here, the jury found that the product was not defective as designed, that it was reasonably safe for its intended or reasonably foreseeable uses, that it was not defective when it left defendants' hands, and that it was not a proximate cause of the accident. It also found that at the time of the accident, the

product was being used for an intended or reasonably foreseeable purpose in that "it was not being misused or had not been substantially altered in any way that was not reasonably foreseeable." The Appellate Division concluded that the jury had found that Jurado had used the machine in a foreseeable manner and that the jury's finding was a rejection of the defense expert's theory that "the in-running nip point was guarded by reason of its location....:" 253 *N.J.Super.* at 271, 601 *A.*2d 748. Special interrogatory number three, the jury's answer to which was the predicate for that conclusion, however, does not mention the word "manner." Instead, the interrogatory focuses on the purpose for which the product was being used at the time of the accident.

Consequently, the Appellate Division should not have assumed that the jury had decided the issue of misuse based on the manner in which Jurado had used the collator. In particular, the Appellate Division states: "The jury found that plaintiff had to put his hand into the nip point area during foreseeable operation." *Ibid.* In effect, the Appellate Division defined away the alternative that the jury found only that the machine had been used for its intended purpose. The inconsistency in the jury's findings requires a retrial on liability as well as damages.

The record suggests that if on retrial the jury determines that plaintiff's misuse was objectively foreseeable, that determination will predetermine that the defect was the proximate cause of the accident. If so, the trial court should instruct the jury that its determination of the existence of a defect will have that further effect.

The Appellate Division, after concluding that the jury must have determined that Jurado had not used the collator in an improper manner, implicitly concluded further that the jury must have determined that the defect was the proximate cause of the accident. As previously stated, however, we cannot ascertain whether the jury found that plaintiff had used the

collator in an improper manner or for an improper purpose. Contrary to the Appellate Division's implicit conclusion, moreover, the jury explicitly found that the defect was not the proximate cause of the accident. Given our concern about the possible inconsistency of the jury's finding on the existence of a defect and the implications of that finding for the issue of proximate cause, we believe that the interests of justice are better served by a retrial.

The judgment of the Appellate Division on liability is reversed, and the matter is remanded to the Law Division for a trial on both liability and damages.

CLIFFORD, J., dissenting.

When in a querulous mood, our colleagues at the trial bench sometimes grumble that while trial judges devote their energies to the pursuit of justice, appellate judges spend their time hunched over the record, pawing through it in an unrelenting search for error. One might find support for that dyspeptic observation in today's decision to remand this case for a new trial, given the fact that the jurors rendered a verdict after a charge that, although not squeaky clean, nevertheless fairly put the single critical issue to them in simple, comprehensible terms: was defendants' product as designed, manufactured, or sold defective in that it was not reasonably safe for its intended or reasonably foreseeable uses? Answer: No.

That question and answer should have been the end of the case. In theory, there was no need for the jury to address questions two, three, and four. We have seen many other jury verdict forms in product-liability failure-to-warn cases that state that if the jury finds no defect, it should cease deliberations and return a verdict for defendant. Viewed in that way, the jury's answers to questions two through four become irrelevant, and the sole focus of appellate inquiry becomes whether a reasonable jury could have concluded that the product was not defective.

Whatever shortcomings infect the current Model Civil Jury Charge, no one can be confused by the charge's definition of "defective" as "not reasonably safe for its intended or reasonably foreseeable uses." That is plain English, and I am willing to assume that the jury understood it, understood the evidence, understood what the plaintiff had done with the machine, and understood how plaintiff had been injured. To my way of thinking we go at the problem backwards if we surmise that the jury's answer to interrogatory number three informed, and rendered unacceptable, its answer to interrogatory number one.

With remarkable precision and impeccable clarity the Court lays out the principles of law that henceforth will govern this kind of case. The Court has come up with a better jury charge than the Model Charge, and I enthusiastically endorse the new, improved version. However, I do not perceive that the jury instructions in this case were so wide of the mark as to require yet another court event. The first trial was fair, albeit not pristine, and the result was hardly an unjust one.

I would reverse and remand to the Law Division for entry there of a judgment based on the jury's verdict.

*For reversal and remandment*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Dissenting*—Justice CLIFFORD—1.