**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4407-15T1

TUCKER CLAYTON, by and through
his Parents and Natural Guardians,
CHAD CLAYTON and DIANA CARNEY
and CHAD CLAYTON and
DIANA CARNEY, individually,

      Plaintiff-Appellant,

v.

LA CAJA CHINA, INC.,
RBG INVESTMENTS, LLC and
BRET BAKER,

      Defendants,

and

LC CH, INTERNATIONAL, INC.,

      Defendant-Respondent.

_____

Submitted February 12, 2018 — Decided July 10, 2018

Before Judges Messano, Accurso, and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-5007-11.

Law Offices of S.P. DiFazio, attorneys for appellant (Salvatore P. DiFazio, on the brief).

          Donna Adelsberger & Associates, PC, attorneys
          for respondent (Donna L. Adelsberger, on the
          brief).

PER CURIAM

On June 19, 2010, plaintiff, 14-month-old Tucker Clayton, his mother, father and other relatives went to Bret Baker's eight-acre farm for a pig roast. The party was in progress with dozens of other guests in attendance when plaintiff and his parents arrived. Baker was roasting the pig using a product manufactured and sold by defendant LC CH International, Inc.[1] The device required Baker to place and light charcoal on a tray that sat above the meat and then close the lid of the cooking "box." During the cooking process, the charcoal tray was temporarily removed, spent ashes were disposed of, the pig was turned, its skin was scored, and it was returned to the cooking box, before the charcoal tray was replenished and replaced to crisp the pig's skin.

Baker was familiar with the product, having purchased and used a similar model years earlier. On this occasion, he discarded the spent ash near a cinder block wall, approximately twenty-five feet from the roaster and fifteen feet from his guests' tables.

---

[1] La Caja China, Inc., is the trade name of a line of products manufactured by defendant RBG Investments, LLC (RBG), which is apparently the current owner of the trade name. Any relationship between defendant and RBG is not disclosed in the record.

A-4407-15T1

Plaintiff and his parents had not yet arrived when Baker orally warned his other guests that the ashes were still quite hot.

At some point, plaintiff strayed from his parents' supervision and placed his hands in the hot ashes, causing significant and permanent burn injuries. Plaintiff settled his claims against Baker and proceeded to trial against defendant, alleging the pig roaster was defectively designed and lacked adequate warnings.

The jury concluded that plaintiff failed to prove a design defect but found the pig roaster lacked adequate warnings. However, the jury also concluded the lack of adequate warnings was not a proximate cause of plaintiff's injuries. The court entered judgment for defendant, and plaintiff moved for a new trial, alleging various legal errors. The judge denied that motion, and this appeal followed.

Before us, plaintiff argues the judge should have granted his in limine motion to bar the report and subsequent testimony of defendant's expert, Robert Nobilini, Ph.D., as a net opinion, and the judge committed additional error by permitting Nobilini to testify about the need to exercise "common sense" in using the pig roaster. Plaintiff also argues the judge's instructions on the "heeding presumption" were erroneous. See, e.g., Coffman v. Keene Corp., 133 N.J. 581, 595 (1993) (defining "heeding presumption"

as "a presumption that plaintiff would have 'heeded' or followed a warning had defendant given one"). Lastly, plaintiff contends the judge erred by denying his pretrial in limine motion, and his directed verdict motion at trial, as to whether it was objectively reasonable for defendant to anticipate Baker's method for disposing of the hot ashes.

We have considered these arguments in light of the record and applicable legal standards. We affirm.

I.

One cannot fairly consider plaintiff's arguments regarding Nobilini's report and testimony without examining the report and testimony of plaintiff's expert, Robert E. Moro, a mechanical engineer who qualified as "an expert in consumer products." Moro's report cited regulations and standards regarding "labeling for consumer products," but he did not cite any specific regulation regarding the pig roaster or any similar product. Moro opined that "[a] reasonable alternative safe design" would have included a warning about "the potential of . . . injury when . . . handling hot spent ashes." He noted the roaster's instructions had been modified since Baker's purchase; they now advised consumers to "[a]dd water to ashes to ensure they don't cause fire, or bodily harm." Moro noted defendant now offered an "ash disposal system,"

constructed of metallic components with a metallic lid. He opined that this was a "reasonable safe design alternative."

However, Moro also noted that instead of disposing of the ash in proximity to his guests,

> [a]n alternative common sense safety consideration would have been for . . . Baker to dispose [of them] in a metallic container with a cover. Another alternative consideration would have been to dump the hot spent ashes at another location on his property, since it consists of [eight] acres of land, where there was no possibility of his guests coming into contact with the contents.

In his testimony before the jury, Moro explained that the failure to provide an ash receptacle was a design defect and industry standards required consumer products to warn of any hazards presented by the product. A sufficient warning would have provided precautionary measures, which, in this case might be "put spent ashes in a closed metal container or . . . a significant distance from where any people may be participating in an activity related to the cooking." Moro cited a specific regulation, 16 C.F.R. § 1500.121 (1984), that required warnings to be placed on consumer products similar to the roaster.

At the conclusion of direct examination, the following colloquy took place:

> Counsel: Did you evaluate Mr. Baker's conduct in this case as well?

Moro:  Yes, I did.

Counsel:  And did you have an opinion as to the propriety of the manner in which he dumped the ashes?

Moro:  Based on my review of the available discovery documentation he dumped the ashes anywhere between ten to [twenty-four] feet from where the plaintiff was sitting . . . .

Counsel:  And in your mind would that adhere with a safe distance?

Moro:  Me personally, I think that was insufficient distance.

On cross-examination, Moro acknowledged that the regulation he cited dealt with a requirement to place warnings on bags of charcoal briquettes and "d[id] not address any burn potential[.] [I]t addresse[d] a carbon monoxide issue once the coals are lit . . . ."  The regulation had nothing to do with the roaster box.

In his report, Nobilini noted that Baker was obviously aware of the dangers of the hot ashes because he warned his guests.  He agreed with Moro that a "common sense" alternative was for Baker to use a covered metal container, but Nobilini opined the container would also get quite hot and would need to be located far away from Baker's guests.  Nobilini also agreed with Moro that common sense dictated Baker place the ashes further away from his guests,

and he proposed other alternatives, such as burying the ashes, soaking them in water or barricading the area to prevent access.

Nobilini disputed the need to place a warning on the roaster because "[w]arnings are necessary to alert consumers of the presence of hazards that are not open and obvious." He opined that knowing the ashes were very hot, Baker's actions were not "reasonable or foreseeable." Nobilini disputed the federal regulations cited by Moro applied at all, opining they dealt solely with the dangers of carbon monoxide inhalation from burning charcoal. He cited instructions on bags of charcoal that warn of the dangers of charcoal briquettes and the need to dispose of them safely.

Lastly, Nobilini took issue with Moro's suggestion that an ash disposal box as part of the roaster would alleviate safety concerns. He noted the design defendant later implemented in other models of the roaster still required the very hot ash box be kept away from guests. Nobilini opined that the design of the roaster was not a cause of plaintiff's injuries nor were warnings required. He placed responsibility solely with Baker.

At trial, when Nobilini tried to explain that warnings were not required because "[c]ertain things are totally obvious," plaintiff's counsel objected. He argued that pursuant to N.J.R.E. 702, Nobilini could not testify about "common sense or what people

should know as a matter of common sense."  The judge required Nobilini to answer in terms of his engineering expertise.

Nobilini opined there was no duty to warn about obvious dangers in using a product and no violation of federal regulations. According to Nobilini, under federal law, a manufacturer had no duty to advise the Consumer Products Safety Commission unless it knew its product contained "a defect that create[d] a substantial product hazard," and Moro had acknowledged that defendant was unaware of any injuries caused by using the roaster.  Nobilini opined that Baker's actions were the cause of plaintiff's accident.

Plaintiff moved in limine before trial to bar Nobilini's report as a net opinion.  The judge noted Nobilini, who had fully examined discovery in the case, was in large part criticizing Moro's report, in particular, Moro's discussion of federal statutes and regulations.  While neither report was "the greatest expert report" he had ever seen, the judge noted a lack of standards regarding the "hot box" made it difficult for both experts.  He denied plaintiff's motion.

At the close of all the evidence, plaintiff renewed his request to strike Nobilini's testimony as a net opinion, arguing Nobilini's emphasis upon Baker's lack of "common sense" violated N.J.R.E. 702, and Nobilini cited no scientific or engineering data.  The judge denied the motion, reasoning:

8

[T]he question is, ultimately, did Dr. Nobilini say anything other than it's common sense. Well, yes, he did. He talked about the Consumer Product Safety Act and the Consumer Product Safety Commission. He gave some wherefores. Was it the greatest opinion, no, not at all.

Neither was Mr. Moro's, quite frankly. And, you know, I remember reading the reports and Mr. Moro basically blamed Mr. Baker and then said, and by the way, you know, the Consumer Product Act and he talked about charcoal. He didn't talk about this particular unit. And then Dr. Nobilini, his report basically said, yes, what he said is correct. So they're both, for lack of a better phrase, lousy opinions.

But there's enough there to get them to the jury. In my mind this case goes to the jury. It's that simple, because there's fact questions up and down, as to whether Mr. Baker is the one who is solely responsible.

Before us, plaintiff renews his objections, arguing Nobilini's report and testimony contained only net opinions largely premised upon common sense, a subject not beyond the ken of the average juror. See, e.g., Scully v. Fitzgerald, 179 N.J. 114, 127 (2004) ("A jury does not need a fire expert to explain to it the dangers that might follow when a lit cigarette is thrown into a pile of papers or other flammable material."). We find no reason to reverse.

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court," Townsend v. Pierre,

221 N.J. 36, 52 (2015), and an appellate court "appl[ies] [a] deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Id. at 53 (second alteration in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011)). "The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (alteration in original) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)). "An expert's conclusion 'is excluded if it is based merely on unfounded speculation and unquantified possibilities.'" Id. at 55 (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)).

Here, we agree entirely with the judge's assessment of both experts' reports and testimony, i.e., they rested upon the thinnest of expert reeds. However, Nobilini properly expressed disagreement with Moro's conclusion that the lack of adequate warnings violated federal regulations or an alternative design using an attached covered metallic ash box would have avoided the accident. Nobilini did so in the context of engineering principles that warrant express warnings only when use of the product posed non-obvious dangers. It follows that more than simply expressing something within the knowledge of average jurors, i.e., common

sense, Nobilini explained why warnings were not necessary in this case. Finally, Moro specifically addressed Baker's lack of common sense in choosing to dispose of the ashes in close proximity to his guests. We see no reason why the judge should have foreclosed defendant from pointing out its expert's agreement with that premise.

## II.

Baker testified that when he purchased his first roaster, he read and followed the instructions to assemble the product and read the cooking instructions on the side of the roaster. When Baker bought his second roaster, he threw the instructions away because he knew how to assemble the product. Baker was aware and did not need to be told the ashes were hot, but he did not realize how hot they remained until he examined ashes left from a previous roast and found they were still warm days later.

During the charge conference, plaintiff argued defendant failed to adduce any proof that Baker would not have heeded a warning had one been provided. Defendant argued there was evidence that Baker already knew of the risk posed by hot ashes and failed to read the instructions actually provided. Defendant contended whether Baker would have heeded a warning was a fact question for the jury.

A-4407-15T1

The judge proposed modifying Model Jury Charges (Civil), 5.40C, "Failure to Warn/Instruct" (rev. Oct. 2001), by telling the jury plaintiff had introduced evidence Baker read the instructions provided. Plaintiff continued to object to submitting the issue to the jury but agreed to the following language, and the judge instructed the jury,

> In this case the plaintiff[] claim[s] the roaster was defective because there was no adequate warning or instruction. If you find that the roaster was defective because adequate warnings or instructions [were] not given, then you must decide whether the lack of an adequate warning or instruction was a proximate cause of the accident.
>
> The defendant LC CH has introduced evidence seeking to show that defendant Bret Baker would not have read and followed an adequate warning or instruction even if one had been provided by the defendant. <u>Plaintiff has introduced evidence that defendant did read the instructions.</u> It is for you the jury to decide if he actually read the instructions. You have to decide whether Bret Baker would have read and heeded a warning or instruction had one been given or that he would not have read and heeded a warning or instruction had one been given.
>
> Plaintiff has the burden to prove by a preponderance of the credible evidence that Mr. Baker would have followed an adequate warning instruction if it had been provided.
>
> [(emphasis added); <u>see</u> <u>id.</u> at 8-9.]

In products liability litigation, "[w]hen the alleged defect is the failure to provide warnings, a plaintiff is required to

prove that the absence of a warning was a proximate cause of his harm." Coffman, 133 N.J. at 594. The heeding presumption serves to ease a plaintiff's burden of proof on the issue of causation. Id. at 603. "[O]nce the heeding presumption comes into play, the burden of coming forward with evidence, i.e. the burden of production, shifts to the defendant to overcome or rebut the presumption." Sharpe v. Bestop, Inc., 314 N.J. Super. 54, 67 (App. Div. 1998), aff'd o.b., 158 N.J. 329 (1999). There are generally two methods a defendant could use to rebut the heeding presumption: the first is "by offering evidence concerning the plaintiff's knowledge of the very risk that the absent warning was supposed to address." Id. at 74. The second is by "introduc[ing] evidence of plaintiff's attitudes and conduct apart from knowledge of the product's risk that demonstrates an indifference to safety warnings." Ibid. "[I]f defendant presents sufficient evidence to rebut the presumption, . . . the presumption disappears and the plaintiff, consistent with his original burden of persuasion, must prove by a preponderance of the evidence that the failure to warn was a proximate cause of his injury." Id. at 67.

Here, defendant argued that Baker's testimony, if believed, rebutted the presumption in both manners outlined in Sharpe. We agree. The judge's instructions fairly placed the issue before

the jury where it properly belonged, and we find no reason to reverse.

## III.

Plaintiff moved pretrial to bar the jury from considering Baker's comparative fault because it was foreseeable that those using the pig roaster would dump the ashes on the ground. <u>See, e.g.</u>, <u>Jurado v. W. Gear Works</u>, 131 N.J. 375, 385 (1993) (citations omitted) ("[A] defendant may still be liable when a plaintiff misused the product, if the misuse was objectively foreseeable."). At the time, the judge denied the motion, reasoning it was not an appropriate in limine request, and there was a jury question presented as to "how much . . . the manufacturer [is] supposed to foresee."

At trial, plaintiff read the deposition testimony of Roberto Guerra, defendant's principal, and later called Guerra as a witness before the jury. In particular, Guerra recounted his use of the pig roaster at a resort with celebrity chef Bobby Flay for a broadcast on The Food Network. During the segment, Guerra dumped spent coals onto nearby grass and sand, and he recalled how the resort's management was upset because of the damage done to the premises. Guerra said the incident led him to develop an alternative model, mainly for commercial use, that contained a receptacle for spent ashes.

At the conclusion of all testimony, plaintiff moved for a directed verdict on the issue of objective foreseeability. See, e.g., Brown v. United States Stove Co., 98 N.J. 155, 168 (1984) (citation omitted) ("[T]he doctrine applies to those future occurrences that, in light of the general experience within the industry when the product was manufactured, objectively and reasonably could have been anticipated."). The judge denied the motion, concluding that although it was entirely foreseeable that the ashes needed to be discarded somewhere, there was "a jury question as to whether or not it's objectively foreseeable that the end user is not going to do something smart with it."

Before us, plaintiff contends that because Baker's decision to dump the ashes was objectively foreseeable, his negligence could not be a proximate cause of plaintiff's injuries and the judge should have directed a verdict on that issue and never submitted it to the jury. The verdict sheet contained a specific interrogatory immediately prior to consideration of Baker's negligence: "Was the manner in which . . . Baker dumped the ashes on his property 'Objectively Foreseeable' to [defendant]?"

Initially, we note that because the jury concluded any failure to warn was not a proximate cause of plaintiff's injuries, it never reached the issues of whether Baker's use or misuse of the product was objectively foreseeable or his comparable fault.

A-4407-15T1

However, plaintiff contends the denial of his in limine motion and motion for a directed verdict, together with Nobilini's testimony, placed Baker's conduct squarely before the jury and tainted its consideration of the evidence. We therefore address plaintiff's claim.

"The absence of misuse [of a product] is part of the plaintiff's case. Misuse is not an affirmative defense." Jurado, 131 N.J. at 386. "[P]roduct misuse" may be using the product for an "improper purpose" or using it in an improper manner. Ibid. "[T]he plaintiff in a design-defect products-liability suit may succeed even if the product was misused, as long as the misuse or alteration was objectively foreseeable." Ibid.

However, even if misuse of the product was objectively foreseeable, "[p]roduct misuse theoretically could relate to the existence of a defect, the issue of causation, or that of comparative fault." Id. at 387. See also Wallace v. Ford Motor Co., 318 N.J. Super. 427, 432 (App. Div. 1999) (quoting Johansen v. Makita USA, Inc., 128 N.J. 86, 102-03 (1992)) ("[A] plaintiff's conduct may be relevant to the 'question of proximate cause,' in that a jury may find that plaintiff's conduct 'had been the sole cause of the accident.'").

In this case, it was foreseeable that using the pig roaster would entail discarding hot ashes. But, whether it was reasonably

16

foreseeable that Baker would use the pig roaster in an arguably improper manner by discarding the ashes in close proximity to dozens of guests, presented a factual issue at best. We find no error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION